IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES DENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:16-cv-1263-NJR |
| | ) | |
| THOMAS BURRELL, | ) | |
| ALFONSO DAVID, | ) | |
| KAREN SMOOT, | ) | |
| JEFFERY DENNISON, | ) | |
| BOB ALLARD, | ) | |
| DEDA MILLIS, | ) | |
| S. ENGLER, and | ) | |
| SHERRY BENTON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Charles Dent is currently incarcerated at the Shawnee Correctional Center in Vienna, Illinois. (Doc. 1 at 28.) Proceeding *pro se*, Dent has filed a complaint under 42 U.S.C. § 1983, alleging that the dentist at Shawnee failed to properly treat Dent's tooth-related problems, that the medical director and a number of other officials failed to intervene in that improper treatment, and that the medical director failed to promptly treat Dent's chronic migraine condition. (*Id.* at 1-2.) Dent seeks compensatory damages, punitive damages, and permanent injunctive relief, as well as a preliminary injunction. (*Id.* at 28.)

This matter is now before the Court for a review of Dent's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During the § 1915A review, the court "shall identify cognizable claims or dismiss the complaint, or any portion

of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim" or if it "seeks monetary relief from a defendant who is immune."

### Background

According to Dent's complaint, Dent has been incarcerated at the Shawnee Correctional Center since May 10, 2016. (Doc. 1 at 25.) On July 8, 2016, he began experiencing severe tooth pain, and he was seen by Thomas Burrell, a dentist at the prison, three days later. (*Id.* at 2.) During that initial meeting, Dent told Burrell that he had severe pain around one or more of his teeth and that he had a history of gum disease and abscesses. (*Id.* at 8.) Burrell examined the area but did not perform an x-ray; he concluded that one of Dent's molars had an abscess and that it needed to be extracted. (*Id.* at 2.) Dent told Burrell that he had been experiencing severe pain, throbbing, headaches, and sensitivity to light. (*Id.*) Burrell prescribed Dent "30 antibiotics and 30 ibuprofen," and told Dent that he would extract the problematic tooth in seven days. (*Id.*)

By July 21, 2016, Dent's tooth still had not been extracted, and Dent ran out of the medications prescribed by Burrell. (*Id.*) From July 21st to July 27th, Dent sent request slips to Burrell to see him again but was still not slated for an appointment, so Dent sent Burrell a letter telling him of his need for tooth extraction or at least his need for a refill of his medications. (*Id.*) The letter went unanswered, leading Dent to send another letter on July 31, 2016, this one pleading to Burrell for an extraction given Dent's worsening pain. (*Id.* at 3.)

On August 5, 2016, Burrell saw Dent, told him that he had been too busy to conduct the extraction earlier, and placed Dent on a waiting list for an extraction. (*Id.* at 4.) Dent objected, asked for a quicker extraction and more medications, told Burrell of his history of severe gum disease and abscesses, and informed Burrell that he was in a great deal of pain. (*Id.*) Dent also asked Burrell to perform an x-ray to verify the problematic tooth. (*Id.* at 9.) Burrell declined to conduct x-rays, held fast to the waiting list, and told Burrell to leave his office. (*Id.* at 10.) Dent returned to his housing unit and filed a grievance against Burrell, indicating that he was still in pain, needed an extraction,

and was out of medication. (*Id.*) That grievance was ultimately denied as moot by Grievance Officer Allard on September 14, 2016, as by then Dent had already been seen by Burrell, and his tooth had been extracted. (Doc. 1-1 at 16.)

On August 15, 2016, Burrell called Dent to his office, told Dent that he did not have to file a grievance to secure care, and also told Dent that, because he was "special," Burrell would conduct an extraction now. (Doc. 1 at 10.) Dent asked Burrell if it was safe to conduct the extraction before the infection cleared, and Burrell told Dent that he was not going to conduct x-rays or prescribe more antibiotics, and asked Dent if he wanted the extraction or not. (*Id.*) Dent said that he felt that he "had no choice" but to allow Burrell to perform the extraction, and Burrell extracted the purportedly problematic molar. (*Id.* at 11.) For several days after the extraction, Burrell experienced persistent aching and throbbing, symptoms that he characterizes as atypical given that he did not experience them when he had teeth removed in the past. (*Id.*) On August 19, 2016, Burrell saw Dent again, noted that he had an ongoing infection around the extraction, and prescribed Dent more antibiotics and ibuprofen as treatment. (*Id.* at 12.)

Despite the medications, Dent continued to experience pain and could not eat, sleep, or even chew. (*Id.*) On August 23, 2016, he examined the extraction site himself and could still see severe swelling, tooth fragments, or part of a broken tooth still in the socket, and he could see that his gums were cut and bleeding. (*Id.*) When he observed these problems, Dent summoned a guard on his housing wing, Corrections Officer Dean, to look into his mouth. (*Id.*) Dean refused to look in Dent's mouth but told Dent he would let Burrell know about the problem. (*Id.*) Dean returned ten minutes after the exchange and told Dent that he had called Burrell but that Burrell did not want to see him. (*Id.*) Dent summoned a few other officers to look at the injury and they all expressed concern; one of them, Lieutenant Hobbs, said he was going to speak to Burrell. (*Id.* at 13.) Dent did not hear back about Hobbs's effort, so he sent a letter to Karen Smoot, a health administrator at the prison, that same day—the letter recounted Burrell's failure to see Dent. (*Id.* at 14.) Nothing came of that, so

Dent advised another lieutenant in his housing wing of his ongoing problems, and Dent was sent to the infirmary for care. (*Id.* at 13.)

When Dent arrived at the infirmary on August 23, 2016, an officer said that Burrell was still at the prison and went to speak with him. (*Id.*) Burrell then spoke with Dent, complained that this was the third time that Dent had someone speak to him, and said that Dent likely did not need any treatment for the extraction. (*Id.*) Burrell then examined Dent and told Dent that the extraction site was still swollen but that the injury merely needed time to heal. (*Id.*) Dent also alleges that Burrell said that he did not like "inmates filing grievances" against him. (*Id.*)

Dent returned to his cell and wrote what looks to be two grievances about Burrell's attitude towards him, both dated August 23, 2016. (*Id.* at 14.) The first said that Dent had checked the extraction site on August 23rd, noticed that a broken tooth was "intruding through the gums," and could see swelling and infection. (Doc. 1-1 at 3-4.) Dent complained that Burrell was refusing to treat the infection and the broken protrusion and was doing so because Dent had filed past grievances against him—Dent wanted to be seen by Burrell immediately and to have his "broken tooth removed." (*Id.* at 3.) Counselor Clark responded to that grievance on September 1, 2016, seemingly finding that no further action was necessary because Burrell told the counselor that the entire tooth was removed, that bone spicules can exist after that kind of procedure, that the entire site would eventually heal, and that Dent was scheduled to be seen by Burrell that day. (*Id.*) Grievance Officer Allard reviewed that finding and agreed that no further action was necessary because Dent's extraction site was clean. (*Id.* at 25.) The second grievance recounted the same events and the same problems and accused Burrell of failing to properly treat Dent's condition. (*Id.* at 5.) Burrell himself responded to that grievance on August 26, 2016, stating that Dent was scheduled to be seen by Burrell on August 26th, that the tooth was not still in the socket, and that bone spicules could be present but that they were not a cause for concern. (*Id.*) Warden Dennison denied the grievance as a non-emergency at some point around Burrell's commentary on the grievance. (*Id.*) After filing these

grievances, Dent also claims that he sent several letters to Smoot concerning improper care, yet she did not intervene. (*Id.* at 15.)

Dent continued to experience pain following his August 23rd visit with Burrell, and he was called to see Burrell on August 27, 2016. (*Id.* at 17.) During that meeting, Burrell examined Dent's mouth again and conducted x-rays, and then told Dent to leave. (*Id.*) Burrell then issued a disciplinary ticket against Dent for showing up late to the appointment; that ticket was ultimately expunged by the prison's committee because a corrections officer vouched that Dent did not have a pass to come to the meeting with Burrell on August 27th. (Doc. 1-1 at 9.)

After the August 27 visit with Burrell, Dent drafted another emergency grievance to Warden Dennison, complaining that he had been in constant pain for two months and that Burrell was not properly treating his dental issues. (*Id.* at 14.) Dent said that Burrell refused to acknowledge that he "botched the extraction," and Dent asked for a referral to see an oral surgeon, flagging that he had received a similar referral while at another prison for dental infections. (*Id.*) That grievance was labeled a duplicate by Counselor Millis on September 12, 2016, and Dennison denied the grievance as a non-emergency on the same day. (*Id.*)

On September 9, 2016, Dent was still in pain, and he had a lieutenant on his housing wing examine his extraction site. (Doc. 1 at 18.) The lieutenant told Burrell that he saw swelling and bleeding near the site, and Dent evidently saw Burrell later that day. (*Id.* at 19.) Burrell told Dent that he was tired of him "and his complaining," that he was convinced that Dent was "playing games," and that he was going to write Dent a disciplinary ticket. (*Id.*) Burrell then examined the extraction area and observed swelling and discoloration. (*Id.*) He told Dent that he still had an infection, that he had no explanation as to why he still had an infection, and that the wound would take time to heal. (*Id.*) Dent complained that something was wrong and that he wanted to see an oral surgeon, but Burrell declined and prescribed him more antibiotics and ibuprofen. (*Id.* at 19.) Dent again explained

his dental history and his prior visits with an oral surgeon for abscesses, but Burrell found that no surgeon was needed. (*Id.* at 20.)

After the September 2016 visit with Burrell, Dent sent a number of letters about his care. On September 9, 2016, he filed another grievance, this one labeled a non-emergency, complaining about his recent meeting with Burrell and insisting that his wound was not healing and that he was still suffering from pain and infection. (Doc. 1-1 at 12-13.) Dent again asked for a referral to an oral surgeon for proper diagnosis and treatment. (*Id.* at 12.) This grievance, like his last one, was labeled a duplicate by Counselor Millis on September 12, 2016. (*Id.*) In October 2016, Dent claims that he sent all of his grievances to the Administrative Review Board and advised them of his need for treatment, but his requests for assistance were denied by Sherry Benton. (Doc. 1 at 23-24.) Dent also claims that he wrote letters to Dr. David, the medical director at Shawnee, and told him about his ongoing issues with Burrell during an unrelated appointment on September 13, 2016, but David did not help him. (*Id.* at 21-22.) Finally, Dent claims that he filed a grievance against Dennison, Smoot, David, Allard, and Millis on October 28, 2016, accusing them of not intervening in his dental care and asserting a need for treatment. (Doc. 1-1 at 26.) Counselor Engler denied that grievance in November 2016. (*Id.*)

The vast majority of Dent's complaint concerns his dental care at Shawnee, but he also alleges that he was deprived of care for his chronic headaches since his arrival at the prison. Dent saw a nurse upon his arrival at Shawnee, and he told the nurse that he needed to be prescribed Excedrin pain medication, as that was the only headache-related medication that the prisons would allow that helped his migraines. (*Id.* at 25.) The nurse told Dent that she would refer him to Dr. David, as he was the only person at the facility who could prescribe Excedrin. (*Id.*) Dent waited for several weeks without being called by David, so he placed a sick call request to see the nurse, who gave him some Tylenol and again referred him for a visit with David. (*Id.*) Several more weeks passed and Dent still had not seen David for treatment, so he wrote a letter to David informing him

that he needed Excedrin rather than Tylenol, as that was the only medication that kept Dent's migraines under control. (*Id.* at 26.) More weeks passed and Dent's condition worsened, so he wrote a grievance on August 5, 2016, concerning his lack of Excedrin. Dent then saw another doctor at the prison, who prescribed him Excedrin. (*Id.*) Dent did ultimately see David for follow up on September 13, 2016. (*Id.* at 21-22.)

Dent alleges that, as of November 15, 2016, he is still experiencing pain and swelling in his mouth, and that the hole in his gum has still not closed. (*Id.* at 23.) On November 21, 2016, he filed a complaint in this Court, along with a request for preliminary injunctive relief.

## Discussion

The Court begins its § 1915A review with a note about the parties at issue in this case. Throughout his complaint, Dent refers to the conduct of some individuals not named in his caption or his defendant list—among other persons, he says that a number of corrections officers were aware of his need for treatment and that an unspecified nurse at Shawnee participated in the medical care for his chronic headaches. Because these parties are not listed in the caption by name or by Doe designation, they will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). In addition, Dent references a prior incident concerning his dental care at Big Muddy Correctional Center, but he has not included any reference to Big Muddy in the claims that he has parsed out in his complaint, and he has not named the individuals whom he says were involved in his care at Big Muddy as defendants. For that reason, the Court does not read his complaint as asserting claims concerning what occurred at Big Muddy, and any claim explicitly linked to Dent's care at Big Muddy should be considered dismissed without prejudice, too.

Turning to the substantive allegations in Dent's complaint, Dent has subdivided his complaint into four counts, but in doing so he has missed some of the legal allegations concerning his

care at Shawnee that he has laid out elsewhere in the complaint. Owing to the Court's obligation to construe a *pro se* complaint liberally, the Court finds it proper to re-divide the claims in the complaint into the following counts. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.

> **COUNT 1:** Burrell failed to promptly and properly treat Dent's abscess and abscess-related complications, in violation of the Eighth Amendment.
>
> **COUNT 2:** Burrell made improper treatment decisions and wrote a false disciplinary report against Dent because Dent filed grievances against him concerning his treatment, in violation of the First Amendment.
>
> **COUNT 3:** David, Smoot, Dennison, Allard, Millis, Engler, and Benton violated the Eighth Amendment by not intervening in Dent's dental care.
>
> **COUNT 4:** David failed to properly treat Dent's migraine-related problems from May 2016 to August 2016, in violation of the Eighth Amendment.
>
> **COUNT 5:** Millis violated Dent's grievance-related constitutional rights by labeling his September 2016 grievances as duplicates.

Dent's complaint focuses on allegations linked to Burrell's medical care, so the Court will start there (**Count 1**). The Eighth Amendment of the United States Constitution bars the cruel and unusual punishment of prisoners, and prison officials violate this proscription "when they display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). To bring an Eighth Amendment claim against a medical official, a prisoner has two hurdles to clear:  he must first show that his medical condition is "objectively" serious, and he must then allege that the medical professional acted with the requisite state of mind. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002).

For screening purposes, Dent has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient

would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Dent's dental problems qualify as serious, at least at this early stage. *See id.* at 1372 n.7.

Dent's complaint also sufficiently alleges that Burrell acted with deliberate indifference at the screening stage. To be sure, "medical malpractice, negligence, or even gross negligence" by a physician "does not equate to deliberate indifference," *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). Because deliberate indifference is such a demanding state of mind requirement, there is no constitutional violation merely because a physician's treatments ultimately prove ineffective, *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008), nor is there a constitutional violation solely because a doctor refuses to give a prisoner the exact treatment he wishes, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). That said, deliberate indifference can exist if a professional's decision represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). It can also exist when an official fails to provide any treatment for a medical condition, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010), when an official persists with ineffective treatment for a medical problem, *Greeno*, 414 F.3d at 655, or when an official delays medical treatment or needlessly prolongs a prisoner's pain, *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). When Dent's complaint is construed liberally and all inferences are drawn in Dent's favor, Dent says that Burrell delayed extraction, improperly initiated an extraction without appropriate preventative care, and then failed to treat Burrell's complications or employed ineffective treatment in addressing those complications. While Burrell's statement that time was the only treatment necessary may prove true, at this stage the Court cannot rule out indifference by Burrell, so **Count 1** may proceed.

Dent goes on to allege that Burrell retaliated against him for Dent's decision to file grievances against Burrell concerning Burrell's care (**Count 2**). To state a retaliation claim, a prisoner must allege that he engaged in conduct protected by the First Amendment, that he suffered a deprivation at the hands of a defendant that would likely deter future First Amendment activity, and that the prisoner's protected conduct motivated the defendant's retaliatory acts. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Dent alleges that Burrell decided not to conduct x-rays or provide further antibiotic treatment when the initial extraction was done because the appointment was forced by Dent's grievance. In addition, Dent alleges that Burrell filed a false disciplinary report against him on August 27, 2016, again because Dent filed grievances attacking Burrell's care. Both of those allegations state plausible retaliation claims for screening purposes, so the retaliation claims in **Count 2** may proceed.

Dent next claims that a number of prison officials violated his constitutional rights based on the way they handled his grievances and letters from the start of Burrell's treatment in July 2016 to his correspondence with them in October 2016 (**Count 3**). Burrell should know that the denial of a grievance or the rejection of a letter by a prison official, standing alone, usually is not enough to violate the United States Constitution. *See, e.g., George v. Dent*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). That said, if a letter advises a prison official of an ongoing need for medical assistance and the official does not intervene to assist, a prisoner can state a claim against the official, especially at the threshold stage of a case. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Construing Dent's complaint liberally, Dent has alleged that Dr. David was told of failures in Burrell's care by a number of letters in the Summer of 2016 and in person in September 2016 but did nothing to help him. Dent has also alleged that Smoot knew of Burrell's ineffective treatment by way

of Dent's letters in August and September 2016, and that Dennison, Allard, Millis, Engler, and Benton knew of the need for help based on Dent's grievances from August to October 2016. Given that Dent alleges that he told these officials of his entire history of treatment with Burrell and of his complicated dental health history, Dent has stated a claim against them at this preliminary stage. While those claims may not survive summary judgment because many of those officials' decisions to defer to Burrell may not have been reckless, *see Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008), the Court cannot rule out deliberate indifference at this phase, so **Count 3** may proceed.

Dent next alleges that Dr. David violated his constitutional rights by delaying medical treatment for his chronic migraine condition (**Count 4**). As the Court already said above, to state a deliberate indifference claim, a prisoner must allege an objectively serious medical condition and must allege facts suggesting that an official was deliberately indifferent to that condition. *Jackson*, 300 F.3d at 765. While it is a close case, the Court finds that Dent has sufficiently alleged that his migraine condition is objectively serious for purposes of threshold review, especially in light of his history with headache-related problems, his need for long-term treatment in the past, and Dent's allegation that his migraines cause blurred vision, vomiting, and numbness on the left side of his body when not treated. *See Gutierrez*, 111 F.3d at 1372 n.7. In addition, while Dent concedes that he received some treatment from a nurse for his headaches while waiting for Dr. David to see him and that another physician at the prison ultimately provided effective treatment for his headaches, he alleges that Dr. David effectively ignored him and his need for treatment for a lengthy period, and that suffices to allege deliberate indifference at the threshold screening stage of the case. **Count 4** may proceed against Dr. David.

Dent finally alleges that Counselor Millis, one of the counselors who dealt with his dental-related grievances, violated his constitutional rights when she improperly processed two of his grievances as duplicates in September 2016 (**Count 5**). While Dent's deliberate indifference claim against Millis has been allowed to proceed for the reasons stated above, this claim, to the extent it

asserts only that Millis mishandled a grievance, must fail. The Seventh Circuit has rejected any free-standing due process or speech claim concerning a prison's grievance process. *See*, *e.g.*, *Courtney v. Devore*, 595 F. App'x. 618, 620–21 (7th Cir. 2014) (noting that "state grievance procedures do not create substantive liberty interests protected by due process," and the "mishandling" of those grievances states no claim); *Owens*, 635 F.3d at 953–54 ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause . . . ."). Rather, the right to a grievance procedure exists only to ensure the First Amendment access to the courts. *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008). In this case, Dent has not alleged any barrier to court access, and his "invocation of the judicial process" points in the opposite direction. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 2009). Because Dent has not alleged a barrier to court, **Count 5** must be dismissed without prejudice.

One closing note is in order concerning a motion that Dent filed with his complaint. Dent has filed a motion for a temporary restraining order and a preliminary injunction, which the Clerk of Court docketed as a motion for a temporary restraining order. (Doc. 2.) The motion and attached declaration states that Dent has not received proper care for the tooth extraction site up to the present, and that he is still suffering from pain, swelling, and a possible infection in the area to this day. Dent insists that he is not receiving treatment concerning this problem, although his complaint, his motion for emergency relief, and the exhibits attached to his complaint suggest that he is still under the care of medical officials at Shawnee, that he received antibiotic treatment as recently as September 9, 2016, and that he reported that his condition was improving somewhat on September 10, 2016. (See Doc. 1-1 at 25.) Dent should know that a temporary restraining order is an order issued without notice to the party to be enjoined that may last no more than fourteen days, and it can only issue if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *See* FED. R. CIV. P. 65(b). In the prison context, the orders are typically employed "to prevent a

substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). Given that the exhibits suggest follow up and recent treatment for Dent's dental problems, the Court finds that a temporary restraining order is not appropriate here.

That said, the Court's threshold review dictates that Plaintiff's request for preliminary injunctive relief deserves prompt consideration. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motion for a preliminary injunction will be referred to United States Magistrate Judge Donald G. Wilkerson, who shall resolve the request as soon as practicable and issue a Report and Recommendation. Warden Dennison, who is already a named defendant in his individual capacity, will remain in the case in his official capacity as well for the purpose of responding to injunctive orders. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **BURRELL**; **COUNT 2** shall **PROCEED** against **BURRELL**; **COUNT 3** shall **PROCEED** against **DAVID**, **SMOOT**, **DENNISON**, **ALLARD**, **MILLIS**, **ENGLER**, and **BENTON**; and **COUNT 4** shall **PROCEED** against **DAVID**. Warden **DENNISON** will also remain in this case in his official capacity for the purpose of responding to injunctive orders.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **BURRELL**, **DAVID**, **SMOOT**, **DENNISON**, **ALLARD**, **MILLIS**, **ENGLER**, and **BENTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court

will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

IT IS FURTHER ORDERED that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are ORDERED to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is REFERRED to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

IT IS FURTHER ORDERED that Plaintiff's pending motion for recruitment of counsel (Doc. 4) is REFERRED to Magistrate Judge Wilkerson for consideration.

IT IS FURTHER ORDERED that Dent's motion for a temporary restraining order (Doc. 2) is DENIED. Because the motion also seeks preliminary injunctive relief, the Clerk of Court is DIRECTED to file a duplicate of the motion at Docket Entry 2 as a separate motion for a preliminary injunction in this case. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), that pending request for a preliminary injunction is REFERRED to Magistrate Judge Wilkerson, who

shall resolve the request for injunctive relief as soon as practicable and issue a Report and Recommendation. The period for filing any objections to Magistrate Judge Wilkerson's Report and Recommendation shall not exceed **14 days** from the date of the report. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also **REFERRED** to Magistrate Judge Wilkerson.

Further, this entire matter is **REFERRED** to Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all parties consent.*

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED:  November 28, 2016**

                                             _____
                                             **NANCY J. ROSENSTENGEL**
                                           **United States District Judge**