IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES DENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:16-CV-01263-NJR-DGW |
| | ) |
| THOMAS BURRELL, ALFONSO DAVID, KAREN SMOOT, JEFFERY DENNISON, HARRY ALLARD, DEDA MILLIS, STEPHEN ENGLER, and SHERRY BENTON, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 56) filed by Defendants Thomas Burrell and Alfonso David, as well as the Motion for Leave to Join Co-Defendant's Motion for Summary Judgment filed by Defendants Jeffery Dennison, Deda Millis, Harry Allard, Karen Smoot, Stephen Engler, and Sherry Benton (Doc. 102). For the reasons set forth below, both the Motion for Summary Judgment and the Motion to Join are denied.

## BACKGROUND

On November 21, 2016, Plaintiff Charles Dent filed this action pursuant to 42 U.S.C. § 1983, alleging Defendant Thomas Burrell, the dentist at Shawnee Correctional Center, failed to properly treat an abscessed tooth. He also alleges Alfonso David, the medical director at Shawnee, and a number of other officials failed to

intervene in that improper treatment, and that David failed to promptly treat Dent's chronic migraine condition (Doc. 1, pp. 1-2). The Court conducted a preliminary review of Dent's Complaint pursuant to 28 U.S.C. § 1915A, and allowed him to proceed on the following claims:

> **COUNT 1:** Burrell failed to promptly and properly treat Dent's abscess and abscess-related complications, in violation of the Eighth Amendment.
>
> **COUNT 2:** Burrell made improper treatment decisions and wrote a false disciplinary report against Dent because Dent filed grievances against him concerning his treatment, in violation of the First Amendment.
>
> **COUNT 3:** David, Smoot, Dennison, Allard, Millis, Engler, and Benton violated the Eighth Amendment by not intervening in Dent's dental care.
>
> **COUNT 4:** David failed to properly treat Dent's migraine-related problems from May 2016 to August 2016, in violation of the Eighth Amendment.

*Grievances*

It is undisputed that Dent submitted multiple grievances regarding Count 1, Burrell's failure to treat his abscessed tooth. Dent first filed a non-emergency grievance on August 5, 2016 (Doc. 57-1, pp. 23-24), stating that on July 11, 2016, he began experiencing severe tooth pain. On July 15, 2016, he was called to the dental department, but the dentist, Burrell, did not take any x-rays. Dent claimed he knew he had an abscessed tooth and sought to be called back to dental for x-rays and for a "proper diagnosis." On August 15, 2016, the grievance counselor responded to the grievance and found the issue to be resolved as Dent's tooth had since been removed (*Id.*). On September 14, 2016, the Grievance Officer recommended, for the same reason, that the

grievance be found moot (*Id.* at p. 22). The Chief Administrative Officer ("CAO") concurred with this decision on September 19, 2016 (*Id.*), and Dent appealed the decision to the ARB. The ARB issued its decision on March 22, 2017, finding that Dent's issue was moot considering his tooth was extracted on August 15, 2016 (*Id.* at p. 21).

Dent also filed two emergency grievances related to his dental care on August 23, 2016 (Doc. 57-1, pp. 13-16). Within these nearly identical grievances, Dent complained that Burrell was ignoring a piece of broken tooth in the socket where his tooth had been pulled. Dent claimed Burrell's inadequate treatment was retaliation for Dent filing his August 5, 2016 grievance (*Id.* at pp. 14, 16). Despite being marked as an emergency, one of the grievances was replied to by the grievance counselor rather than the CAO (*Id.* at p. 13). The other August 23, 2016 grievance was sent directly to the CAO, who determined two days later that the grievance was not an emergency (*Id.* at p. 15). The following day, Burrell himself responded to the grievance stating that the tooth was extracted in its entirety, there was no tooth remaining in the socket, and when the socket begins to heal, bone spicules can occur (*Id.*). The Administrative Review Board ("ARB") received Dent's appeal of these grievances on November 4, 2016 (*Id.* at p. 10), and subsequently denied the appeals because "the issue was appropriately addressed by the facility Administration" and because the "claims against Dentist are not substantiated." (*Id.*).

Dent filed a final emergency grievance related to his dental care on September 8, 2016 (*Id.* at p. 37). In this grievance, Dent complained to the CAO that he had filed two prior emergency grievances regarding his treatment by Burrell, but had not received a

response (*Id.*). He also stated that he had been in constant pain for more than two months, that there were clearly tooth fragments and a tissue mass in the extraction site, and that Burrell refused to acknowledge that he "botched" the extraction of his tooth. Dent demanded to be seen by an offsite oral surgeon for treatment (*Id.*). On September 12, 2016, the CAO determined the grievance was not an emergency (*Id.*). The counselor also responded that day stating that it was a "duplicate grievance." (*Id.*). Burrell appealed this denial to the ARB, arguing that the CAO refused to process it as an emergency grievance and asking the ARB to "fast track" the emergency grievance so he could get treatment for his severe pain (*Id.*). The ARB received Burrell's appeal of the September 8 grievance on October 13, 2016, and denied it the following day because Burrell already had two other grievances regarding dental care pending appeal (*See* Doc. 57-1, p. 35).

Also at issue are exhaustion of the grievances relating to Defendant David's failure to treat Dent's chronic migraines (Count 4) and Defendant Burrell's retaliation against Dent by filing a false disciplinary report (Count 2). Again, it is uncontested that Dent filed grievances on both of these issues: a non-emergency grievance regarding David's failure to treat his migraines was filed on August 5, 2016 (Doc. 57-1, p. 19), and a non-emergency grievance claiming Burrell wrote a false disciplinary ticket in retaliation for Dent filing grievances against him was filed on October 6, 2016 (*Id.* at p. 4).

In his August 5, 2016 grievance, Dent stated that he had been prescribed Excedrin for his chronic migraines for seven years prior to his arrival at Shawnee on May 10, 2016 (*Id.* at p. 19). It further stated that on July 16, 2016, Dent saw a nurse about getting his

prescription for Excedrin renewed (*Id.* at pp. 19-20). The nurse told Dent that the Excedrin would have to be prescribed by Defendant David and that there was only one doctor for 1,000 inmates (*Id.* at p. 20). After suffering for several weeks, Dent placed another sick call request on August 3, 2016. When he was called to sick call on August 5, 2016, he was informed that the nurse never submitted him to see the doctor (*Id.*). He then filed a grievance requesting that David renew his Excedrin prescription (*Id.* at p. 19). On August 15, 2016, the counselor responded noting that Dent was scheduled to see Dr. Coe (not a defendant) on August 19, 2016, for an assessment of his need for Excedrin (*Id.*). On September 14, 2016, the Grievance Officer reviewed the grievance and determined that the issue was moot considering Dent had been scheduled to see the doctor (*Id.* at p. 18). The CAO concurred in this decision on September 19, 2016 (*Id.*). The ARB received Dent's appeal of this grievance on September 29, 2016, and on March 22, 2017—after this lawsuit was filed—found the issue to be moot (*Id.* at p. 17).

The counselor responded to Dent's October 6, 2016 grievance regarding Burrell's alleged retaliation on October 18, 2016, instructing Dent to attach the allegedly false disciplinary report and summary and then forward it to the Grievance Officer. On November 15, 2016, the Grievance Officer reviewed the incident and found that the disciplinary report had been expunged. Thus, the grievance was denied (*Id.* at p. 3). Dent appealed this denial to the ARB on December 2, 2016—again, after the filing of this lawsuit (*Id.*). On April 10, 2017, the ARB denied Dent's appeal of his October 6, 2016 grievance because it found the issue was appropriately addressed by the facility (Dent's

disciplinary ticket had been expunged) and because the claims of retaliation by Burrell were not substantiated (*Id.* at p. 2).

*Motions Filed by Defendants*

On April 7, 2017, Magistrate Judge Wilkerson entered an Order setting a June 2, 2017 deadline for filing motions for summary judgment regarding exhaustion of administrative remedies ("*Pavey* motions") (Doc. 39). Defendants Burrell and David timely filed the motion currently pending before the Court (Doc. 56). Defendants Dennison, Millis, Allard, Smoot, Engler, and Benton, all employees of the Illinois Department of Corrections ("IDOC Defendants"), did not file a *Pavey* motion. After the deadline passed, the parties participated in a status conference with Magistrate Judge Wilkerson, in which the pending *Pavey* motion by Defendants Burrell and David was discussed (Doc. 61). Almost five months after the deadline for filing *Pavey* motions had passed, the IDOC Defendants filed the pending Motion for Leave to Join Co-Defendant's Motion for Summary Judgment (Doc. 102).

LEGAL AND ADMINISTRATIVE STANDARDS

*Summary Judgment*

Summary judgment is proper only where the moving party can demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (*citing Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO,* 824 F.3d 645, 647-48 (7th Cir. 2016)). The judge's

role at summary judgment is not to weigh the evidence or assess the facts, but simply to determine whether there is a genuine issue for trial. *Id.* at 259. The question is can there be only one reasonable conclusion based on the evidence, or could reasonable minds differ? *Id.* at 250-51.

*Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Dole v. Chandler,* 438 F.3d 804, 808 (7th Cir. 2006). Proper exhaustion requires an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Defendants, however, bear the burden of proving a failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole*, 483 F.3d at 809.

The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey v. Conley*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a plaintiff has exhausted his remedies. 544 F.3d 739, 742 (7th Cir. 2008). If a plaintiff has exhausted his remedies, the

case will proceed on the merits. *Id.* If, however, a plaintiff has not exhausted, the Court may either allow the plaintiff to exhaust or terminate the matter. *Id.*

Under the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* The grievance form must contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint. *Id*. The grievance officer is required to advise the Chief Administrative Officer ("CAO") at the facility in writing of the findings on the grievance. *Id.* § 504.830(e). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed, where reasonably feasible under the circumstances. *Id*. Responses to duplicate grievances on issues that are currently being grieved may be combined in one response. *Id.*

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. *Id.* § 504.840. If it is determined that a substantial risk of imminent personal injury or other serious or irreparable harm exists, the grievance process must be expedited. *Id.* § 504.840.

If, after receiving the response of the CAO, the offender still believes the problem has not been resolved to his satisfaction, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id.* § 504.850(a). An inmate's administrative

remedies are not exhausted until the appeal is ruled on by the Administrative Review Board. *See id.* § 504.850(a); *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 F. App'x 10, 13 (7th Cir. 2009). If further remedies are unavailable, the inmate is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 F. App'x at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

## Discussion

### I. Emergency Grievances

Defendants Burrell and David argue Dent failed to his exhaust administrative remedies with regard to his complaints in Counts 1, 2, and 4[1] (Doc. 57, p. 7). Specifically, Burrell and David argue that Dent filed this lawsuit prior to receiving a decision on his appeals to the ARB; thus, he filed his lawsuit too soon and summary judgment must be granted in their favor.

---

[1] Defendants do not address Dent's claim against David in Count 3; thus, the argument is deemed waived. *See Fluker v. County of Kankakee*, 741 F.3d 787, 793 (7th Cir. 2013) (a defendant in prison litigation who has a possible exhaustion defense can waive it and instead seek dismissal on the merits).

It is undisputed that Dent submitted multiple grievances regarding Burrell's failure to treat his abscessed and infected tooth. It is also undisputed that the CAO determined one of Dent's August 23, 2016 emergency grievances and his September 8, 2016 emergency grievance were not, in fact, emergencies.

Recently, the Seventh Circuit held that administrative remedies should be considered exhausted upon rejection of an emergency grievance by the CAO, with no further action required on behalf of the inmate. *Bentz v. Ghosh,* No. 16-1607, 2017 WL 5564679 at *4 (7th Cir. Nov. 20, 2017) (non-precedential disposition) ("[A]n Illinois inmate who asks the warden to handle a grievance on an emergency basis need not resubmit that complaint as a normal grievance after the warden concludes that the grievance does not present an emergency. . . . Under these circumstances Illinois rules do not require him to appeal that decision to the Administrative Review Board.").

Accordingly, when the CAO determined Dent's August 23, 2016 grievance was not an emergency, Dent effectively had exhausted his administrative remedies with regard to his claims in Count 2 that Burrell ignored a piece of broken tooth in the socket where his tooth had been pulled in retaliation for Dent filing his August 5, 2016 grievance. Likewise, when the CAO rejected Dent's September 8, 2016 grievance as a non-emergency, Dent's claim in Count 1 that Burrell failed to treat Dent's abscess-related complications was sufficiently exhausted.

## II. Non-Emergency Grievances

It is also uncontested that Dent filed a non-emergency grievance on August 5, 2016, relating to David's failure to treat Dent's chronic migraines as alleged in Count 4, a

second non-emergency grievance on August 5, 2016, relating to Burrell's inadequate pre-extraction dental care as alleged in Count 1, and a final non-emergency grievance on October 6, 2016, asserting Burrell wrote a false disciplinary ticket in retaliation for Dent filing grievances against him, as alleged in Count 2. It is also undisputed that these grievances were appealed to the ARB and ultimately rejected (Doc. 57-1, pp. 2, 4, 17). David argues, however, that Dent failed to exhaust his administrative remedies because he did not file his grievance within the 60-day timeframe required by the PLRA (Doc. 57, p. 9). Further, both Burrell and David argue Dent improperly filed this action before the ARB appellate process was complete (Doc. 57, p. 7).

**A.     *60-Day Deadline***

Dent was transferred to Shawnee Correctional Center on May 10, 2016 (Doc. 57, p. 9). Prior to his transfer, Dent had been prescribed Excedrin for seven years in order to treat his chronic migraines (Doc. 57-1, p. 19). On July 16, 2016, Dent told a nurse about the Excedrin prescription, and the nurse referred him to Dr. David for a prescription (Doc. 1, p. 25, ¶33). After several weeks of waiting, Dent placed a sick call request and was against seen by the nurse, who gave him Tylenol and made another referral to Dr. David for an Excedrin prescription (Doc. 1, p. 25, ¶33). After almost three months of no prescription, blurred vision, headaches, and numbness, Dent filed a grievance against David on August 5, 2016 (Doc. 57-1, pp. 23-24).

David argues the filed grievance was untimely because Dent was required to file it within 60 days of his transfer to Shawnee (Doc. 57, p. 9). The Court disagrees. Under the Illinois Administrative Code, an inmate must file a grievance within 60 days after the

discovery of the incident, occurrence, or problem that gives rise to the grievance. § 504.810(b). Every day that Dent went without his Excedrin constituted a new incident, occurrence, or problem giving rise to the grievance. Thus, Dent's August 5, 2016 grievance was timely filed with regard to his claim that, beginning June 6, 2016 (60 days before he filed his grievance), he was denied treatment for his chronic migraines.

B.     *ARB Appeals*

Both David and Burrell also argue Dent filed this lawsuit prematurely because the ARB appeal process had not yet been completed. Defendants are correct that the PLRA requires the prison's administrative process to be completed before a plaintiff files suit. *Perez v. Wisconsin*, 182 F.3d 532, 534 (7th Cir. 1999). That did not happen with regard to Dent's non-emergency grievances. In each instance, the ARB issued its decision *after* Dent filed this lawsuit. Nonetheless, Dent argues that he *was not required* to appeal the decisions, as he received the relief he requested.

It is true that exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust while his lawsuit is pending. *See Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002). If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones v. B*ock, 549 U.S. 199, 223 (2007).

On the other hand, the Seventh Circuit has clearly held that a prisoner need not appeal grievances that were resolved as he requested and where money damages were not available. *Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005). "When there is no

possibility of any further relief, the prisoner's duty to exhaust available remedies is complete." *Id.* at 696 (quotation and citation omitted).

Here, Dent's August 5, 2016 grievance regarding Burrell's failure to promptly and properly treat his abscessed tooth was determined by the counselor, Grievance Officer, and CAO to be moot because Dent's tooth had since been removed. Thus, his grievance had been resolved as requested. Likewise, Dent's other August 5, 2016 grievance relating to David's failure to treat Dent's chronic migraines also was found to be moot by prison administrators because Dent had since been scheduled to see the doctor. Finally, Dent's October 6, 2016 grievance asserted Burrell wrote a false disciplinary ticket in retaliation for Dent filing grievances against him. On November 15, 2016, the Grievance Officer denied the grievance because disciplinary report had been expunged. In other words, Dent had received the relief he requested. Dent then filed this lawsuit on November 21, 2016 (Doc. 1).

Because Dent received the relief requested in his non-emergency grievances, he was not required to appeal the grievances to the ARB, and they are deemed properly exhausted.

III. **Motion for Leave to Join**

The IDOC Defendants did not file a *Pavey* motion in this case. After the deadline for filing such motions had passed, the parties participated in a status conference, in which the pending *Pavey* motion by Defendants Burrell and David was discussed (Doc. 61). All counsel, including counsel for the IDOC Defendants, indicated the matter was currently on track (Doc. 61). At no time did the IDOC Defendants indicate an intent

to request leave to file a *Pavey* motion out of time. Thus, the Court infers counsel for the IDOC Defendants did not believe they had a cognizable *Pavey* claim.

Almost five months after the deadline for filing *Pavey* motions, and after new counsel had entered his appearance (Docs. 92, 101), the IDOC Defendants filed the pending Motion for Leave to Join Co-Defendant's Motion for Summary Judgment. Unfortunately, however, the motion provides no justification for the IDOC Defendants' failure to file a timely *Pavey* motion. Rather, the motion simply categorically states Defendants had a meritorious defense based on exhaustion that was not filed by prior counsel (Doc. 102, p. 3). In short, the current attorney disagrees with the prior attorney's assessment, and therefore wants a second bite at the apple. Defendants provide no legal support for why they are entitled to such an opportunity.

Further, the IDOC Defendants argue the claims raised by Defendants Burrell and David are equally applicable to them and thus Plaintiff would not be prejudiced by their joining in the original motion (Doc. 102, pp. 2-3). The Court finds, however, that the same claims are not raised. Burrell and David's claims relate to the denial of Excedrin for migraines and the denial of proper dental care for an abscessed tooth. Nowhere in the pending *Pavey* motion, memorandum, or reply do Burrell or David address the failure to intervene claim (Count 3), which is the only claim implicating the IDOC Defendants. If the Court were to allow the IDOC Defendants to Join the Motion, an additional analysis would need to be completed that has not been briefed by any party. *See United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (explaining that "perfunctory and

to request leave to file a *Pavey* motion out of time. Thus, the Court infers counsel for the IDOC Defendants did not believe they had a cognizable *Pavey* claim.

Almost five months after the deadline for filing *Pavey* motions, and after new counsel had entered his appearance (Docs. 92, 101), the IDOC Defendants filed the pending Motion for Leave to Join Co-Defendant's Motion for Summary Judgment. Unfortunately, however, the motion provides no justification for the IDOC Defendants' failure to file a timely *Pavey* motion. Rather, the motion simply categorically states Defendants had a meritorious defense based on exhaustion that was not filed by prior counsel (Doc. 102, p. 3). In short, the current attorney disagrees with the prior attorney's assessment, and therefore wants a second bite at the apple. Defendants provide no legal support for why they are entitled to such an opportunity.

Further, the IDOC Defendants argue the claims raised by Defendants Burrell and David are equally applicable to them and thus Plaintiff would not be prejudiced by their joining in the original motion (Doc. 102, pp. 2-3). The Court finds, however, that the same claims are not raised. Burrell and David's claims relate to the denial of Excedrin for migraines and the denial of proper dental care for an abscessed tooth. Nowhere in the pending *Pavey* motion, memorandum, or reply do Burrell or David address the failure to intervene claim (Count 3), which is the only claim implicating the IDOC Defendants. If the Court were to allow the IDOC Defendants to Join the Motion, an additional analysis would need to be completed that has not been briefed by any party. *See United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (explaining that "perfunctory and

to request leave to file a *Pavey* motion out of time. Thus, the Court infers counsel for the IDOC Defendants did not believe they had a cognizable *Pavey* claim.

Almost five months after the deadline for filing *Pavey* motions, and after new counsel had entered his appearance (Docs. 92, 101), the IDOC Defendants filed the pending Motion for Leave to Join Co-Defendant's Motion for Summary Judgment. Unfortunately, however, the motion provides no justification for the IDOC Defendants' failure to file a timely *Pavey* motion. Rather, the motion simply categorically states Defendants had a meritorious defense based on exhaustion that was not filed by prior counsel (Doc. 102, p. 3). In short, the current attorney disagrees with the prior attorney's assessment, and therefore wants a second bite at the apple. Defendants provide no legal support for why they are entitled to such an opportunity.

Further, the IDOC Defendants argue the claims raised by Defendants Burrell and David are equally applicable to them and thus Plaintiff would not be prejudiced by their joining in the original motion (Doc. 102, pp. 2-3). The Court finds, however, that the same claims are not raised. Burrell and David's claims relate to the denial of Excedrin for migraines and the denial of proper dental care for an abscessed tooth. Nowhere in the pending *Pavey* motion, memorandum, or reply do Burrell or David address the failure to intervene claim (Count 3), which is the only claim implicating the IDOC Defendants. If the Court were to allow the IDOC Defendants to Join the Motion, an additional analysis would need to be completed that has not been briefed by any party. *See United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (explaining that "perfunctory and

undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

Thus, the Court finds the IDOC Defendants waived any claims regarding failure to exhaust administrative remedies, and no good cause exists for allowing them to join Defendants Burrell and David's Motion for Summary Judgment.

## CONCLUSION

For these reasons, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Thomas Burrell and Alfonso David (Doc. 56) is **DENIED**. The Motion for Leave to Join Co-Defendants' Motion for Summary Judgment filed by Defendants Jeffery Dennison, Deda Millis, Harry Allard, Karen Smoot, Stephen Engler, and Sherry Benton (Doc. 102) is also **DENIED**.

**IT IS SO ORDERED.**

DATED: February 20, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**