IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES DENT,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**THOMAS BURRELL, ALFONSO DAVID, KAREN SMOOT, JEFFERY DENNISON, HARRY ALLARD, DEDA MILLIS, STEPHEN ENGLER, and SHERRY BENTON,**<br><br>    **Defendants.** | Case No. 3:16-CV-1263-NJR-MAB |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Pending before the Court is the Report and Recommendation of Magistrate Judge Mark A. Beatty (Doc. 201), which recommends the undersigned grant the Motion for Summary Judgment filed by Defendants Harry Allard, Sherry Benton, Jeffery Dennison, Stephen Engler, Deda Millis, Karen Smoot ("IDOC Defendants") (Doc. 180) and grant in part and deny in part the Motion for Summary Judgment filed by Defendants Thomas Burrell and Alfonso David ("Wexford Defendants") (Doc. 182). Both Plaintiff Charles Dent and the Wexford Defendants filed timely objections to the Report and Recommendation (Doc. 202, 203). For the reasons set forth below, the Court adopts the Report and Recommendation in part, respectfully rejects it in part, and grants summary judgment to all Defendants.

## BACKGROUND[1]

### A. Dr. Alfonso David

Plaintiff Charles Dent is an inmate in the Illinois Department of Corrections. In May 2016, Dent was transferred to Shawnee Correctional Center from Big Muddy Correctional Center (Doc. 183-3 at p. 7). On May 10, 2016, a nurse at Big Muddy filled out an Offender Health Status Transfer Summary in which it was noted that Dent had a history of migraines (Doc. 183-5 at p. 114). Two days later, an intake nurse at Shawnee completed an intake chart review, which noted no chronic medical conditions and no medical referrals (*Id.* at p. 115). In the section for "Other Referrals/Interventions," the note stated "Buspar 20 mg PO @ MS thru 9/7/16." It then listed Defendant Dr. Alfonso David's name and his signature, which Dr. David attested meant he had reviewed the intake note and recommendation (Doc. 183-2 at p. 11).

The first time Dent's history of migraines appears in his medical records after his transfer to Shawnee was on July 16, 2016, when a nurse noted that Dent self-reported having chronic migraines and an Excedrin prescription that had run out (Doc. 183-5 at p. 118). The nurse prescribed acetaminophen 325 mg for Dent to use as needed for pain (*Id.*).

On August 9, 2016, Dr. David reviewed Dent's chart and recommended that Dent continue to use over-the-counter medications and continue treatment protocols as needed (*Id.* at p. 121). On August 19, 2016, Dent was seen by another physician, Dr. Coe

---

[1] The Court recites only those facts relevant to the objections filed.

(*Id.* at p. 121). The medical record from that visit includes a note that, "per HCUA," Dent suffered from chronic migraines and requested Excedrin (*Id.*). Dr. Coe educated Dent on migraines, prescribed Excedrin Migraine, and referred Dent to see Dr. David for follow-up (*Id.*). He also suggested a few different medications for Dent's chronic migraines (*Id.*).

On September 12, 2016, Dr. David examined Dent based on Dr. Coe's referral (*Id.* at p. 122). Dent subjectively reported experiencing chronic migraines on his right side one to two times per week, the pain from which are relieved by Excedrin (*Id.*; Doc. 183-2 at ¶ 18). Based on Dent's subjective complaints and Dr. David's evaluation, Dr. David determined that Dent experienced chronic migraine headaches and prescribed Excedrin Migraine for two months with three refills (*Id.*).

Dr. David attested that he was not made aware of Dent's requests for Excedrin Migraine until he saw Dent for the first time in September 2016 (Doc. 183-2 at ¶ 17). Dent testified, however, that he sent Dr. David "a couple letters and requests asking him to renew" his Excedrin prescription for his migraines, but he never received a response (Doc. 183-3 at p. 31). Dent further disputes Dr. David's testimony that he was not aware of Dent's history of migraines when Dr. David attested that he reviewed Dent's medical records and completed a chart review on August 9, 2016.

**B. Dr. Thomas Burrell**

Dr. Thomas Burrell, a licensed dentist employed at Shawnee Correctional Center, examined Dent for tooth pain in the area of tooth #31 on July 15, 2016 (Doc. 183-1 at ¶¶ 3, 11). Dent informed Dr. Burrell at that visit that he has a history of periodontal disease and has had 15 teeth extracted (Doc. 183-3 at p. 20). During the examination, Dr. Burrell

observed that tooth #31 was moving, which is an indication of periodontal disease (Doc. 183-4 at p. 18). He also noticed that the gums around the tooth appeared to be infected (Doc. 203-1 at ¶ 11). Dr. Burrell testified that severe tooth mobility means the tooth needs to be extracted (Doc. 183-4 at p. 18). He further testified that there was no need to do percussion testing—a test performed to determine whether a root canal is feasible—because the tooth was moving (*Id.*).

Although there was an infection present, Dr. Burrell testified that Dent did not have an abscess (Doc. 203-1 at ¶ 11; Doc. 183-4 at 32). Dent's dental record from July 15, 2016, also does not mention an abscess (Doc. 183-5 at p. 255). Dent disputes this testimony, however, testifying that Dr. Burrell diagnosed him with an abscess and told him the tooth needed to be removed (Doc. 193 at p. 65; Doc. 183-3 at p. 11). Dr. Burrell gave Dent a prescription for Amoxicillin to treat the infection and ibuprofen 400mg for his pain (Doc. 203-1 at ¶ 11). Dr. Burrell also put Dent on the prison's extraction list (Doc. 183-4 at p. 19). Dr. Burrell attested that it is common practice to treat an infection with an antibiotic prior to extracting a tooth, as it can be difficult to numb the area if an infection is present (Doc. 203-1 at ¶ 12).

Dr. Burrell saw Dent at regular dental call lines between July 16 and August 5, 2016 (*Id.* at ¶ 14). His tooth was not extracted at these appointments, however, as extractions are not scheduled during the dental call line (*Id.*).

Dr. Burrell examined Dent on August 5, 2016, and gave him pain medication, though Dr. Burrell did not believe Dent was actually in pain anymore (Doc. 183-4 at p. 19). There was no sign of infection at that time (*Id.* at p. 20). Dr. Burrell told Dent to get

his teeth cleaned, then let him know about his discomfort level (Doc. 183-5 at p. 55). That same day, Dent filed a grievance against Dr. Burrell for putting him on a waiting list to have his tooth extracted after previously telling him that his tooth was abscessed (Doc. 193 at p. 65).

Dent testified that on August 15, 2016, Dr. Burrell verbally informed Dent that he would extract the tooth because he was upset about a grievance being filed against him. (*Id.* at p. 15). Dr. Burrell told Dent: "Since [you're] considered special, [I] will extract the tooth today." (*Id.*). Tooth #31 then was extracted under anesthesia (Doc. 203-1 at ¶ 15). Dent testified that the extraction took 40 to 45 minutes due to his tooth breaking in separate pieces (Doc. 183-3 at p. 16).

Dr. Burrell attested that he did not diagnose an abscess on tooth #31 prior to extracting it (*Id.* at ¶ 29). Instead, he believed tooth #31 showed signs of an infection, which was treated with antibiotics and pain medication (*Id.*). He further attested that, although he is now aware that Dent filed several grievances related to his dental care, he was not aware of Dent's August 5, 2016 grievance when he extracted tooth #31 on August 15, 2016 (*Id.* at ¶ 30).

### C. Present Litigation

Dent filed this lawsuit on November 21, 2016, alleging Defendants Dr. Burrell and Dr. David, as well as Defendants Karen Smoot, Jeffery Dennison, Harry Allard, Deda Millis, Stephen Engler, and Sherry Benton violated his Eighth Amendment rights by exhibiting deliberate indifference with regard to his serious medical needs. He also asserted a retaliation claim. After threshold review of his complaint pursuant to 28 U.S.C.

§ 1915A, Dent was permitted to proceed on the following counts:

**Count 1:** Burrell failed to promptly and properly treat Dent's abscess and abscess-related complications, in violation of the Eighth Amendment.

**Count 2:** Burrell made improper treatment decisions and wrote a false disciplinary report against Dent because Dent filed grievances against him concerning his treatment, in violation of the First Amendment.

**Count 3:** David, Smoot, Dennison, Allard, Millis, Engler, and Benton violated the Eighth Amendment by not intervening in Dent's dental care.

**Count 4:** David failed to properly treat Dent's migraine-related problems from May 2016 to August 2016, in violation of the Eighth Amendment.

(Doc. 6).

On February 13, 2019, the IDOC Defendants filed a motion for summary judgment on the merits of Dent's claims against them (Doc. 180). On March 8, 2019, the Wexford Defendants similarly filed a motion for summary judgment (Doc. 182). After the Court granted Dent's motion to have his recruited counsel withdrawn, Dent filed *pro se* responses to both motions (Docs. 193, 194). Dent also filed his own motion for summary judgment (Docs. 193, 193-1).

On September 12, 2019, Judge Beatty entered the Report and Recommendation currently before the Court (Doc. 201). Judge Beatty recommends that the undersigned deny Dent's motion for summary judgment, grant summary judgment to the IDOC Defendants, and grant summary judgment to Defendant Dr. David. With regard to Defendant Dr. Burrell, Judge Beatty recommends granting summary judgment with

regard to Dent's retaliation claim and his deliberate indifference claim as it relates to Dent's post-extraction care, but denying summary judgment with regard to Dent's claim that Burrell failed to promptly and properly treat his abscess.

On September 18, 2019, Dent filed an objection to the Report and Recommendation only with regard to Judge Beatty's determination that Dr. David is entitled to summary judgment on Count 4. Specifically, Dent objects to Judge Beatty's conclusion that Dr. David was not deliberately indifferent for failing to prescribe him Excedrin pain medicine between approximately May and August of 2016 (Doc. 202). The Wexford Defendants objected to Judge Beatty's finding of fact that Dr. Burrell diagnosed Dent with an abscess at tooth #31 and his conclusion of law that a jury could find that Dr. Burrell was deliberately indifferent to that abscessed tooth (Doc. 203). Both Dent and the Wexford Defendants timely filed responses to the objections (Docs. 204, 205).

### LEGAL STANDARDS

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues to which specific objections have made, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part));

*Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). If only a "partial objection is made, the district judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734,739 (7th Cir. 1999). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment is proper only if the moving party can demonstrate "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## DISCUSSION

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, a plaintiff must show first that his condition was "objectively, sufficiently serious" and second that the "prison officials acted with a sufficiently culpable state of mind." *Greeno*

*v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted).

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). While deliberate indifference is not medical malpractice, a "delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 758 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)).

To establish deliberate indifference, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Even if a defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

Defendants do not dispute that Dent suffered from an objectively serious medical condition; accordingly, the Court presumes for the purpose of summary judgment that Dent's conditions were sufficiently serious to meet the deliberate indifference standard.

### A. Dr. David – Deliberate Indifference to Dent's Migraines from May 2016 to August 2016

Dent has objected to Judge Beatty's conclusion that Dr. David is entitled to summary judgment, arguing there are issues of material fact as to whether Dr. David was deliberately indifferent to his migraine headaches from May 12, 2016 to August 2016. Specifically, Dent claims there are issues of fact as to whether Dr. David was aware of his 10-year history of being prescribed Excedrin for his migraine headaches (Doc. 202). Dent contends that Dr. David had knowledge of his migraines on May 12, 2016, when the nurses noted in his medical records that he had been prescribed Excedrin prior to his arrival at Shawnee and when the intake nurse made a referral to Dr. David to renew his prescription. He also claims he sent a couple of letters to Dr. David. At the latest, he argues, Dr. David became aware of Dent's prescription on August 9, 2016, when he reviewed Dent's medical chart and recommended that Dent continue over-the-counter medication.

As Defendants point out, however, neither the transfer summary prepared at Big Muddy on May 10, 2016, nor the intake document signed by Dr. David on May 12, 2016, mentions Excedrin. And Dr. David attested that his signature on the intake form meant only that he had reviewed the intake form. The first reference to Excedrin in Dent's medical records appears on July 16, 2016, when a nurse noted that Dent self-reported having chronic migraines and an Excedrin prescription that had run out. The nurse then prescribed acetaminophen for Dent to use as needed for pain. The first time that Dr. David reviewed Dent's chart was on August 9, 2016, when he recommended that Dent

continue using over-the-counter medications.

Even construing the evidence in a light most favorable to Dent, the Court finds that Dr. David is entitled to summary judgment on Dent's deliberate indifference claim. Dent has presented no evidence demonstrating that Dr. David actually knew about Dent's Excedrin prescription prior to September 12, 2016, or that he received Dent's letters and deliberately disregarded them. Although Dr. David did a chart review on August 9, 2016, he testified that he was unaware of Dent's requests for Excedrin Migraine until he saw Dent for the first time in September 2016. Moreover, even if Dr. David was aware of Dent's prior Excedrin prescription before September 2016, it was not unreasonable for Dr. David to wait to prescribe Excedrin until after first verifying Dent's condition by examining him in person. *See Williams v. Guzman*, 346 F. App'x 102, 105 (7th Cir. 2009). Accordingly, the Court finds that Dr. David is entitled to summary judgment.

**B. Dr. Burrell – Deliberate Indifference to Dent's Pre-Extraction Serious Dental Needs**

In his Report and Recommendation, Judge Beatty found that while the decision of whether to order an x-ray or perform additional diagnostic techniques are within a doctor's medical judgment, doctors cannot ignore serious medical conditions by ordering diagnostic techniques that are inadequate. In this case, Dr. Burrell chose not to order an x-ray of tooth #31, and there is a factual dispute as to whether Dr. Burrell performed a percussion test on Dent's tooth. It then took another month for Dent's abscessed tooth to be extracted. Based on these facts, Judge Beatty concluded that a jury could find Dr. Burrell's actions constituted deliberate indifference.

The Wexford Defendants object to these findings (Doc. 203). First, Defendants object to the finding of fact that Dr. Burrell ever diagnosed an abscessed tooth, arguing that there is no evidence Dent ever had an abscess. Defendants note that Dent is not qualified to self-diagnose an abscess, regardless of his dental history. Instead, the evidence shows that Dr. Burrell diagnosed a "simple infection," prescribed antibiotics to treat it, and extracted it once the infection had cleared.

True, Dent is not an expert and cannot diagnose his own abscess. But Dent testified that Dr. Burrell informed him he had an abscessed tooth that needed to be removed. The Court must credit that testimony. *See, e.g.*, *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017) (noting that the Seventh Circuit has held, time and again, that self-serving testimony and affidavits are competent evidence at summary judgment that must be considered by the Court).

Assuming, then, that Dent *did* have an abscess under tooth #31, the question becomes whether a one-month delay in extracting the tooth could constitute deliberate indifference. Defendants argue that there is no evidence Dr. Burrell's pre-extraction treatment decisions were not based on his professional judgment or that no minimally competent professional would have provided the same treatment as Dr. Burrell. They also assert that there is no evidence an x-ray or percussion test would have led to different treatment or that an earlier extraction was medically necessary. They also note that Dr. Burrell testified an extraction was not possible while there was an active infection. Once Dr. Burrell saw that the infection had cleared, he placed Dent on the extraction list. Under these circumstances, Dent cannot prove that Dr. Burrell violated the Eighth Amendment.

The Court agrees. Assuming that Dr. Burrell told Dent he had an abscess on July 15, 2016, the evidence then shows that Dr. Burrell immediately prescribed antibiotics and a pain reliever and put Dent on the prison's extraction list. Dr. Burrell examined Dent again on August 5, 2016, and found that the infection had cleared. Nevertheless, he gave Dent an additional prescription for a pain reliever. Dr. Burrell then extracted tooth #31 under anesthesia ten days later on August 15, 2016. There is no evidence that Dr. Burrell deliberately or recklessly inflicted pain on Dent or unnecessarily prolonged his pain. *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) ("A dentist demonstrates deliberate indifference by failing to treat the patient promptly, thus prolonging the patient's pain, while knowing that the patient may well be in serious pain that is treatable."). And there is no evidence that any alternative treatment or testing was necessary or would have been effective under the circumstances. Instead, the evidence shows that Dr. Burrell promptly prescribed an antibiotic, ensured Dent had an adequate supply of pain relievers, and extracted his tooth once the infection had cleared. These actions are a reasonable response to Dent's dental issues; accordingly, no jury would find that Dr. Burrell was deliberately indifferent.

For these reasons, the Court respectfully rejects this portion of Judge Beatty's Report and Recommendation and grants summary judgment to Dr. Burrell on Dent's claim that he was deliberately indifferent to Dent's pre-extraction dental needs.

**C. Remaining Claims**

No objections having been filed to the remainder of Judge Beatty's conclusions, the Court reviews them only for clear error. Finding none, the Court adopts those

portions of the Report and Recommendation.

## Conclusion

For the reasons set forth above, the Court **ADOPTS in part and REJECTS in part** the Report and Recommendation of Magistrate Judge Mark A. Beatty (Doc. 201).

The Motion for Summary Judgment filed by the IDOC Defendants (Doc. 180) is **GRANTED**. The Motion for Leave filed by Plaintiff Charles Dent (Doc. 198) is **DENIED as moot**, and Dent's Motion for Summary Judgment (Doc. 193-1) is **DENIED**. Finally, the Motion for Summary Judgment filed by the Wexford Defendants (Doc. 182) is **GRANTED**.

Plaintiff Charles Dent shall recover nothing, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:   October 15, 2019

*Nancy J. Rosenstengel*
_____
**NANCY J. ROSENSTENGEL**
Chief U.S. District Judge